IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DuWAYNE L. KRAMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-08-195 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner of | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment and Memorandum in Support (Document Nos. 10 & 11). The Plaintiff has not moved for Summary Judgment or responded to Defendant's Motion for Summary Judgment. After considering the Defendant's Cross Motion for Summary Judgment, the administrative record, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) be GRANTED, and the decision of the Commissioner of the Social Security Administration be AFFIRMED.

### I.  Introduction

Plaintiff DuWayne L. Kramer ("Kramer") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits and supplemental security income.  Kramer contends that

Administrative Law Judge ("ALJ") erred in rejecting the residual functional capacity ("RFC") assessment completed by Dr. Kusnoor. This assessment states that Kramer is incapable of even a low stress job. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision that Kramer was not disabled, and that the decision comports with applicable law and should be affirmed.

## II.     Administrative Proceedings

On April 20, 2006, Kramer applied for disability insurance benefits and supplemental security income, claiming an inability to work as a result of a cerebrovascular accident and the transient ischemic symptoms that followed. (Tr. 42, 93) The Social Security Administration denied the application at the initial and reconsideration stages. (Tr. 46, 55). Kramer then requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Gerald. L. Meyer, held a hearing on November 15, 2007, at which Kramer's claims were considered *de novo*. (Tr. 28-41). On January 14, 2008, the ALJ issued a decision finding Kramer not disabled and not entitled to supplemental security income or DIB. (Tr. 15-23).

Kramer sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Kramer's contentions in light of the applicable regulations and evidence, the Appeals Council, on June 20, 2008, denied Kramer's request for review. (Tr. 1). The

ALJ's findings and decision thus became final.

Kramer filed a timely appeal of the ALJ's decision. The Commissioner has filed Motion for Summary Judgment (Document No. 10) and Memorandum in Support (Document No. 11). This appeal is now ripe for ruling.

The evidence is set forth in the record, pages 1-340. There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in

the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson,* 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

>   immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

>   The Commissioner applies a five-step sequential process to decide disability status:
>
>   1.  If the claimant is presently working, a finding of "not disabled" must be made;
>
>   2.  If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;
>
>   3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
>   4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
>   5.  If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). If he is successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the

claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 564.

Here, the ALJ determined, in his January 14, 2008, decision, that Kramer was not disabled at step five of the sequential process. In particular, the ALJ determined that Kramer was not presently working (step one); that Kramer's cerebrovascular disease and drug and alcohol abuse were severe impairments (step two); that Kramer's cerebrovascular disease and drug and alcohol abuse did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Regulations (step three); that Kramer was not capable of performing his past work (step four); and that Kramer's impairments did not prevent him from doing other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity (step five). In this appeal, the Court must determine whether substantial evidence supports the finding for step five, and whether the ALJ used the correct legal standards in arriving at that conclusion, including whether the ALJ's RFC decision is supported by substantial evidence.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

## V.   Discussion

### A.  Objective Medical Facts

The objective medical evidence shows that Kramer had a cerebrovascular accident (CVA) and transient ischemic attack (TIA) symptoms in March 2006. According to Kramer, his ongoing TIA

symptoms include right upper extremity weakness, dizziness, and loss of vision in the left eye. Kramer also suffers from alcohol and substance abuse.

The objective medial evidence shows that Kramer was diagnosed with a cerebrovascular accident after being admitted to Christus Hospital in Beaumont, Texas on March 8, 2006. (Tr. 170). This diagnosis was confirmed by a computerized tomography (CT) scan performed by Dr. Brice Smith. (Tr. 220).

Kramer had previously sustained a fall resulting in right upper extremity numbness. Kramer reported to Dr. Paris Patrick Bransford, a cardiologist, that the fall occurred at his parent's home. (Tr. 192). This report is contradicted by Kramer himself, who stated at his hearing and to Dr. Rita Kusnoor that the fall occurred while working. (Tr. 37, 243). Kramer also reported to Dr. Bransford that the fall occurred after smoking marijuana and drinking about ten beers. (Tr. 192).

In the emergency room on March 8, Kramer was found to be in atrial fibrillation. An echocardiogram performed on March 9 confirmed the atrial fibrillation. (Tr. 178). Both Drs. H. Douglas Wilcox and Bransford stressed that Kramer should limit his alcohol, marijuana, and tobacco use as it may precipitate atrial fibrillation. (Tr. 171, 193). Kramer reported to Dr. Bransford that he smokes two to three hits of marijuana a day, smokes one pack of cigarettes a day, and drinks about ten or more beers a day. (Tr. 193). On the same day this history was reported to Dr. Bransford, Kramer denied any alcohol abuse to neurologist Dr. Nestor Punay. (Tr. 196).

On March 9, 2008, Dr. Punay found that Kramer's coordination was slightly decreased on the right due to weakness. (Tr. 197-8). Dr. Earle Thornbill also reported there was some paresthesias to the right upper extremity (Tr. 208). Kramer complained of a headache and blurred vision with heavy exertion the day he was admitted, but Dr. Thornbill noted that Kramer also had been smoking

marijuana all day. (Tr. 210). Kramer denied having tinnitus at this time. (Tr. 212).

Kramer was discharged from the hospital on March 12, 2006 and was diagnosed with atrial fibrillation, hypertension, hyperlipidemia, cerebrovascular accident, polysubstance abuse and chronic tobacco use. (Tr. 170). Kramer reported he was diagnosed with hypertension five years ago and took blood pressure medicine for about one month before he quit. He reported no follow up since that time. (Tr. 193). Medications (Cardizem, Hydrochlorothiazide, Prinivil, potassium, and enteric-coated aspirin) were given to treat these conditions and Kramer was again asked to limit his alcohol, marijuana, and tobacco use. (Tr. 171). Cardiology determined that Kramer was not a candidate for Coumadin therapy because of his alcohol and marijuana abuse and his medical noncompliance in the past. (Tr. 171). No other instructions or physical limitations were given.

On April 20, 2006, Kramer visited Dr. Kusnoor claiming he could not afford the medications he was given in March because he had no insurance. (Tr. 243). Disability reports show, however, that Kramer had insurance coverage until December 31, 2006. (Tr. 108, 110). Kramer stated that he first noticed hypertension twelve years ago but that he was never given medication for it. (Tr. 243). Kramer also complained of tinnitus, blurred vision, right upper extremity numbness, and depression. Kramer tested negative for depression. (Tr. 246). Medications (Cardizem, Potassium, Hydrocholorothiazide, and Lisinopril) were prescribed and Kramer was told to diet, stop smoking, and exercise. (Tr. 244-6).

Kramer sought a consultation with Dr. Prasada Nalluri on August 17, 2006. (Tr. 252). During this consultation Kramer reported he does not smoke or drink alcohol. Kramer also reported blurred vision on his left side. An examination showed that both right and left eye vision was 20/200 without glasses but that both eyes were corrected to 20/25 with glasses. (Tr. 253). Musculoskeletal and

cardivascular tests came back negative. (Tr. 253). Kramer reported right upper extremity weakness. Tests revealed that the motor strength on his right upper extremity was 3/5 and 5/5 in his right lower extremity. (Tr. 254). His grip strength was 5/5 in the left upper extremity and 3/5 in the right upper extremity. Motor strength on his left upper and left lower extremities were both 5/5.

Kramer reported in October 2006 that he was working in the yard when he suddenly became dizzy and lost vision in his left eye for an hour. (Tr. 268). A visit to Dr. Kusnoor in October 2006 showed no abnormalities. (Tr. 269). Kramer was told again to diet, exercise and stop smoking. (Tr. 269-70). He decided to postpone his plan to quit smoking at that time and to report when he was ready to try. (Tr. 270).

On November 27, 2006 a hearing test was administered to Kramer. His hearing was proven to be normal in both ears at 250-1000 hertz and at 8000 hertz in his right ear and up to 1000 hertz in his left ear. (Tr. 267). Mild sensorineural loss was noted in his right ear at 2000 to 4000 hertz and mild to moderate sensorineural loss above 100 hertz in his left ear. (Tr. 267).

In January 2007, Kramer reported an episode of dizziness and confusion lasting about one hour. (Tr. 291). Nothing abnormal was detected during this visit and Kramer tested negative for depression. (Tr. 290). Kramer again postponed his plan to quit smoking. (Tr. 289-290).

In February 2007, Kramer reported a right groin abscess and underwent a drainage procedure. (Tr. 287). He suggested he had been out in the woods and that the abscess could be the result of a possible bite. Hospital discharge instructions listed no physical restrictions (Tr. 296, 298, 300) and no limitations were given in weight bearing, lifting, mobility, driving, bathing and sexual activity (Tr. 296, 300). Kramer could perform these activities "as tolerated" and could return to work. (Tr. 296, 298). The discharge summary also noted that Kramer had no disability. (Tr. 298).

Upon this record, the objective medical evidence supports the ALJ's conclusion that Kramer is not disabled. While Kramer's cerebrovascular disease and drug and alcohol abuse are severe impairments, they do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. In order to meet the listing requirements, all of the listing criteria must be satisfied. *Id.* § 404.1525. While it is evident that Kramer experiences right upper extremity weakness, the listings require "significant and persistent disorganization of motor function in two extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.04(b). Kramer also does not satisfy the requirements of listing 2.02 addressing visual acuity. *Id.* § 2.02. The vision in his left and right eye can be corrected to 20/25 with glasses. Despite some mild to moderate sensorineural hearing loss at certain hertz, Kramer's hearing does not equal or meet the requirements found in listing 2.08 addressing hearing loss. *Id.* § 2.08.

There is no listing for dizziness, confusion, or drug and alcohol abuse. When an impairment is not on the list, a finding will be made based on medical and other evidence. 20 C.F.R. § 404.1520(e). The objective medical evidence shows that Kramer was asked repeatedly to stop smoking, drinking, and using marijuana. (Tr.171, 194, 270, 290). He postponed or failed to follow these treatments. In order to be declared disabled and receive benefits, a claimant must follow treatments. 20 C.F.R. § 404.1530; *see also Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990)(no entitlement to benefits when treatments are not followed irregardless of disability). Because there is no objective medical evidence that meets or medically equals one of the listed impairments, and because treatments for unlisted impairments were not followed, the objective medical evidence factor weighs in favor the of the ALJ's decision.

**B. Diagnosis and Expert Opinions**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's imp. For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

There are three medical opinions in the record: two from physicians who reviewed Kramer's medical records and one from Kramer's personal physician. The two physicians who reviewed the medical records concluded that Kramer's impairments were not disabling, but Kramer's personal physician disagreed.

A RFC assessment was completed first by Dr. Moira Dolan on September 26, 2006, from her review of Kramer's medical records. (Tr. 255-262). Dr. Dolan concluded that Kramer could lift up to 20 pounds occasionally, and 25 pounds frequently, could sit and/or stand six hours in an eight hour work day, and had no postural or visual limitations. Handling and fingering were listed as manipulative limitations. Dr. Dolan further noted that Kramer's "allegations are partially credible."

(Tr. 260).

On December 29, 2006, Dr. John Durfor reviewed Kramer's medical records and affirmed the RFC assessment written by Dr. Dolan. (Tr. 281). Dr. Durfor reported that Kramer's conditions had not worsened.

Dr. Kusnoor completed a RFC questionnaire on August 24, 2007 as well as an undated disability opinion. (Tr. 293-294; 336-340). Dr. Kusnoor diagnosed Kramer with uncontrolled hypertension, CVA, transient ischemic attack (TIA) symptoms of dizziness and loss of vision in left eye, and depression. (Tr. 336-7). She determined that Kramer was unable to take care of himself, could not drive, was incapable of even "low stress" jobs, and was permanently disabled. (Tr. 293, 336-7). Questions regarding Kramer's ability to sit, stand, and perform postural movements were noted as not applicable (Tr. 338-339).

The ALJ based his RFC determination on the assessments of Drs. Dolan and Durfor after finding them to be credible and consistent with the medical evidence and finding no justification for Dr. Kusnoor's assessment. In so doing, the ALJ discussed the objective medical evidence as well as Dr. Kusnoor's explanation of the objective medical evidence:

> As for the opinion evidence, the undersigned reviewed the record very closely and found no examination by the treating physician, Dr. Kusnoor, to justify the residual functional capacity outlined in Exhibit 10F. Although Dr. Kusnoor reported in Exhibit 9F that the claimant was unable to take care of himself, the claimant testified at the hearing that he lives alone. Furthermore, Dr. Kusnoor noted depression, but VA depression screenings were reported negative on at least two occasions (See Exhibits 10F, 2F-22 dated April 20, 2006 and 8F-9 dated January 22, 2007). The claimant sees Dr. Kusnoor for follow up and medication monitoring, but the records do not include diagnostic or laboratory studies or include detailed descriptions of functional limitations to substantiate the residual functional capacity outlined in Exhibit 10F. Overall, the undersigned concurs with the assessment of the State Agency medical examiners regarding the claimant's impairments and residual

functional capacity (See Exhibits 5F and 7F).

(Tr. 21 ). Given that the ALJ was free to reject the opinion of any physician when the evidence supports a contrary conclusion, as well as the ALJ's finding that Dr. Kusnoor's assessment was inconsistent with the medical evidence as a whole, the diagnosis and expert medical opinion factor also supports the ALJ's decision. *Martinez*, 64 F.3d 172, 176.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain and subjective symptoms are disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the Social Security Act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994). In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence

concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Here, Kramer testified at the hearing that he could no longer work because of TIA symptoms of dizziness, confusion, loss of vision in his left eye, and loss of control of his right arm. (Tr. 30, 32). With respect to his right arm, Kramer testified that the awkwardness and heaviness is a constant problem "everyday all day long." (Tr. 32). He testified that he could only use his arm for 20-30 minutes before it became weak and clumsy, and he had problems manipulating objects. (Tr. 32). Kramer did testify that he lives by himself. (Tr. 33-4). With respect to standing and sitting positions, Kramer testified that he could only stand or sit for half an hour at a time and that he spent most of the day reclined on the couch because of dizziness. (Tr. 34-5). Kramer also testified that he does not drive because it creates confusion. (Tr. 35-6). Kramer testified he was taking medications to lower his blood pressure but did not indicate whether he was taking any medications for pain. (Tr. 36). Despite having been told repeatedly to stop drinking, smoking, and using marijuana, Kramer testified that he occasionally drinks alcohol and smokes marijuana, and that he now smokes only three to four cigarettes a day. (Tr. 36-8).

The ALJ found Kramer's complaints concerning the limiting effects of his symptoms not entirely credible. In so doing, the ALJ wrote:

> At the hearing the claimant stated that he was no longer able to work due to the residuals of a stroke and what doctors referred to as a transient ischemic attacks, episodes wherein he loses sight in his left eye, becomes dizzy, and loses control of his right arm. The claimant stated that since the March 2006 incident, his right arm does not function properly and feels awkward and heavy all the time. The claimant is right hand dominant. He stated that after 20-30 minutes of activity such as washing dishes or showering his right arm gets weak and feels numb. He states that he can hold things with his right hand, but cannot swing a hammer and tends to knock things over with his right hand without knowing it or feeling it. He stated that he

14

could walk, stand or sit approximately 30 minutes before experiencing dizziness and weakness. In terms of activities of daily living the claimant states that he spends his time reclining or lying down. He stated he no longer drives and relies on others for transportation. He stated that he has trouble concentrating and feels confused. In response to questioning, the claimant testified that he is still using alcohol on an occasional basis and acknowledged that his physicians told him to quit drinking. He stated that he used marijuana about 3 times a year. Also, in response to questioning the claimant testified that he was building when the March 2006 CVA occurred. The claimant takes blood pressure and anti-coagulant medications (Exhibit 10E).

After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

After careful review of the exhibit file, the undersigned notes several inconsistencies in the medical record and the hearing testimony. The March 2006 treatment notes indicate that the claimant experienced a fall and CVA after using marijuana and consuming at least 10 beers while at his parent's home (Exhibit 1F-39). Other records and the claimant's hearing testimony indicate that the CVA occurred while the claimant was working (Exhibit 2F-19). Moreover, there are inconsistent reports regarding the claimant's alcohol use (Exhibits 1F-40 and 2F-21 as discussed above). The record also reflects that the claimant has been advised against continuing use of marijuana and alcohol and been advised to quit smoking. According to the claimant's testimony he continues to smoke cigarettes and marijuana and consume alcohol. (See also Exhibits 1F-13, 2F-3, 2F-13, 1F-17, 1F-39, 1F-40, 4F-2, and 6F-14). The objective medical records specifically document only one episode of dizziness (Exhibit 9F-3). The claimant does not have any residual slurred speech and vision is reported correctable to 20/25 (Exhibit 4F).

(Tr. 20-21). Credibility determinations, such as that made by the ALJ in this case in connection with Kramer's subjective complaints, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995). Because the ALJ supported his credibility determination with references to the medical evidence and Kramer's testimony about his daily activities, and because the ALJ did not rely on any improper

15

factors, the subjective evidence factor also weighs in favor of the ALJ's decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

At the time of the administrative hearing on November 15, 2007, Kramer was 53 years old, had a GED, some experience in the oil industry, and past relevant work as a carpenter and plumber's apprentice. The ALJ questioned a vocational expert, Dr. Norman C. Hooge, regarding jobs that Kramer could perform. In questioning the vocational expert, the ALJ posed the following hypotheticals:

> Q: Dr. Hooge, would you assume for me a person who could stand or walk about 6 hours in an 8-hour day with normal breaks or sit for 6. Lifting or carrying 10 pounds frequently or 20 pounds occasionally. Never ropes, ladders or scaffolding, kneeling, crawling. Occasionally stooping, crouching, balancing. With the right, dominant hand regarding handling and fingering, frequent but not continual. Could such an individual do the past work that you described?
>
> A: No, he could not. It's too heavy an exertion level plus other limitations.
>
> * * *
>
> Q: If they were 53 years old with a GED and the past work that you described – just use the same limits I just gave you, would there be any other work in the regional or national economy?
>
> A: Such a person – I'm going to go over some areas here – such a person could be an Usher (INAUDIBLE) recreation. You're looking at some 800 state-wide and well over 100,000 nationally. Such a person hypothetically, using that hypothetical could

work in – as a Sales Attendant. In retail cities you're looking at some 15,000 state-wide and well over 500,000 nationally. Such a person hypothetically could actually do Building Custodial work in my opinion and lighten up on unskilled. You're looking at some 10,000 conservatively state-wide and , again, well over 300,000 nationally. There would be others.

Q: Are those all light jobs?

A: They're all light. Yes, Your Honor, and all unskilled.

* * *

Q: I want to give you a 2nd hypothetical guy. Everything is exactly the same except handling and fingering with the right, dominant is limited to occasionally. Would there be any work, which would exist in the regional and national economy?

A: Well – well, I would take out that Building Custodial, the last one, and I'd keep the Ushering job. And did you say fingering and handling or just fingering?

Q: Yes, both handling and fingering.

A: I think such an individual could be a Room Service Clerk too under that hypothetical, which is unskilled. And you're looking at some 1200 state-wide and well over 200,000 nationally.

Q: So under my 2nd hypothetical, you said the Usher could still do it and then you added the Room Service Clerk?

A: Yes.

Q: Not the Sales Attendant or the Building Custodial?

A: Well, again, I think it's a combination. The Sales Attendant – give me the limitation once more on the fingering.

Q: Handling and fingering with the right, dominant occasional.

A: Occasional. There is some if reduced. It's – so I think I'd better not go that way.

(Tr. 38-40) (capitalization in original). Kramer's attorney then questioned the vocational expert about the jobs available to a claimant such as Kramer if additional restrictions were added to the

hypothetical:

> Q: Dr. Hooge, if we have the same hypothetical on #1, but the standing and the walking was limited to 2 hours in an 8-hour day, would he be able to do the 3 jobs that you identified?
>
> A: He could not, no.
>
> Q: And would your answer be the same with respect to Hypothetical #2?
>
> A: Yes.
>
> Q: If Mr. Kramer had to lay down occasionally during the day, say 2 to 3 times a day would he be able to do the jobs identified in either Hypothetical #1 or #2?
>
> A: No, he could not.

(Tr. 40).

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert, which incorporated all the impairments the ALJ found supported by the record. In response to that hypothetical, the vocational expert identified jobs existing in significant numbers in the local and national economy that Kramer could perform. The hypothetical posed by Kramer's attorney incorporated impairments not supported by the record. Given the ALJ's hypothetical questions,

which were based on the ALJ's RFC assessment, an assessment which is supported by substantial evidence, and the vocational expert's testimony in response, the education, age and work history factor also supports the ALJ's decision.

## VI.     Conclusion and Recommendation

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). Given that all the relevant factors weigh in support of the ALJ's decision, that substantial evidence supports the ALJ's decision, and that the ALJ properly considered all the evidence in the record, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 10) be GRANTED and the decision of the Commissioner be AFFIRMED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(c), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 6th day of August, 2009.

_Frances H. Stacy_
Frances H. Stacy
United States Magistrate Judge